Blodgett v. Webster.

## BLODGETT & a. v. WEBSTER.

| 24 | 91 |
| d69 | 534 |
| 24 | 91/ |
| f74 | 189 |

If the defendant, on a sale of goods to him by the plaintiffs, deliver notes for the price of the goods, with his name signed on them as maker, he will not be allowed to deny that the notes were signed by him, or with his name by his authority.

Where a debtor in the course of a negotiation for a compromise with his creditors made a statement of his debts and assets, and a witness made a memorandum of the statement at the time, and afterwards, on discovering an error in one of the sums stated in the memorandum, altered the memorandum by correcting the error; *held,* that the witness, notwithstanding the alteration, might testify by the memorandum, though he did not at the time when he testified recollect the particulars stated in the memorandum.

Letters addressed by the defendant to the agent of plaintiffs, and produced on trial, by the plaintiffs, may be presumed, without farther evidence, to have been sent to the agent and to have been received by him.

Where the plaintiffs sought to avoid a compromise of their demands against the defendant, on the ground that they were induced to agree to the compromise by the misrepresentations of the defendant, and a written statement made by the defendant to the plaintiffs was shewn to be lost; *held,* that a witness who read the written statement might testify that it agreed with a verbal statement, which the defendant made on the same subject.

If an objection, which might be removed by further evidence, is not taken on trial, it will be considered as waived.

To prove that the defendant when he obtained a compromise of his debts, had property which he did not apply to their payment, it is competent to shew,

Blodgett *v.* Webster.

with other evidence, that sixteen months afterwards he purchased a farm at the price of thirty-one hundred dollars.

If conveyances are made by a debtor with intention to secure himself any benefit or advantage, or to place his creditors at a disadvantage in collecting their debts, or if his object be to secure the property for the benefit of his creditors in his own way, without their knowledge or assent, it is a fraud in law ; and if a creditor, believing such conveyances to be *bona fide* and real, is induced by them to enter into a compromise, he will not be bound by it.

If a creditor sell goods and take the purchaser's notes for them, and, by fraud and misrepresentation of the debtor is induced to discharge the debt on receiving a part of it, he may recover the residue in assumpsit on the notes, or for goods sold and delivered.

ASSUMPSIT. In this action the plaintiff claimed the amount of two promissory notes, one dated May 16, 1843, for $1140.88, the other dated September 14, 1843, for $835.49, both payable to the plaintiffs, or order, in six months from date, and also the amount of two bills of goods sold and delivered, of the same amount.

The plea was the general issue.

The plaintiffs introduced evidence tending to prove the sale of goods to the defendant, at the dates and of the amount of those notes, and that the notes were given to secure payment for those goods. Before the trial, notice had been given to the defendant to produce the notes in question, and he now produced two papers agreeing with the notes, as described in the declaration, except that a piece of paper was cut off, where the signature of notes is usually affixed, and there was no signature. A witness testified that he saw those papers in the possession of J. W. Blodgett & Co., and that they were then signed with the name " Benjamin Webster," and were the notes taken in payment of the bills of goods sold to Webster ; one of them was written by himself, and the other by a clerk of the plaintiffs, named Bradford, and that he did not recollect that he saw the defendant sign the notes. The papers were then permitted to be read to the jury, to which the defendant objected.

The defendant objected that the papers produced, being cancelled by cutting off the names, it did not appear that the notes

had not been paid in full. The same witness then testified that in October, 1843, he went to Portsmouth as agent of the plaintiffs, to see the defendant and ascertain the state of his affairs, in company with other creditors at Boston ; that the defendant then represented to him and them, that he was unable to pay his debts in full and was desirous of a compromise ; that the witness was book-keeper, and had charge of the cash and notes of the plaintiffs ; that sometime after he gave up these notes to some person to be settled with the defendant, and some days after received two notes payable to the plaintiffs, one for fifty per cent. of the notes, signed by the defendant, his brothers, and one Caverly, and the other for ten per cent., signed by the defendant and his brothers ; that these notes were all that was ever paid or received by the plaintiffs for their debt, to his knowledge, and that the balance of forty per cent. was carried to the account of profit and loss. There was other evidence tending to prove that all the debts of the defendant at Boston, including the plaintiffs', were agreed to be compromised, and were in fact settled at sixty cents on the dollar. The evidence was objected to as incompetent to prove that the debts were not paid in full, but the objection was overruled.

The plaintiff introduced evidence to prove that the compromise then made by the defendant with the plaintiffs and other creditors at Boston, was induced by fraudulent sales and conveyanances of his property, and by fraudulent representations and concealments of the state of his debts and of his property, and was therefore not binding on the plaintiffs.

One Arnold, a witness introduced to show what representations were made to himself and the creditors, present in relation to the defendant's debts and means of payment, produced a memorandum, made by himself in pencil, of the debts stated by the defendant or assented to by him. This memorandum the witness testified was made correctly at the time, as he understood the statement to be, and had not since been altered, except that the figures expressing the amount of one debt had been altered with ink afterward, upon information that he had mistaken the sum.

It was then objected that the witness could not testify by reference to a paper which had been altered, and he being unable to testify from recollection ; but the court held the evidence admissible as to the items which the witness knew had not been altered.

It appeared that a committee of three persons, one of whom was Samuel Parsons, were appointed by the Boston creditors to investigate the affairs of the defendant, and through whose agency the compromise was effected. Two letters were introduced by the plaintiffs, one addressed to " Samuel Parsons and others," and the other to " Samuel Parsons," relating to said compromise, and read to the jury, upon proof that the same were in the handwriting of the defendant, without any evidence that the same had been sent to Parsons, or received by him, or that they had been communicated to the plaintiffs.

Evidence tending to show that the representations made by the defendant upon which the compromise of his debts was made by his creditors, were untrue, by showing that early after the compromise he was in possession of a large amount of property, was offered by the plaintiffs ; and among other evidence, proof was offered that the defendant, on the 1st day of April, 1845, purchased a farm at Portsmouth for the consideration of thirty-one hundred dollars. The defendant objected to the evidence, as being too long after the compromise, which was made in November, 1843, but the evidence was admitted.

A witness testified that the defendant and his brother, John Webster, were at his office in Portsmouth about the date of the defendant's failure, for the purpose of executing certain deeds which he witnessed but did not read. The defendant had been notified, and John Webster summoned by *subpœna duces tecum*, to produce upon the trial certain deeds of real estate in Limerick, in the county of York, in Maine, made by the defendant to John Webster, and by John Webster to him, but they were not produced. Certified copies of such deeds from the York county registry were produced, purporting to be executed by those parties, to be dated at the time referred to by the witness, to be

attested by him and acknowledged before him as a justice, were admitted and read to the jury—the defendant objecting, but not on the ground that the papers were not duly authenticated. John Webster being subsequently examined as a witness, testified that the deeds of the Limerick property were executed at Portsmouth.

There was evidence tending to show that the defendant made a written statement of his affairs to his creditors after the representations shown and objected to by the plaintiffs, the contents of which did not distinctly appear beyond the fact that it contained a statement of the defendant's assets and debts. A witness, Parsons, testified that there was a statement such as that alleged, but that it did not vary from the first statements made by the defendant. And there was other evidence tending to the same point. It was proved that this written statement was lost, but neither Parsons nor any other witness stated or undertook to state the contents of the statement more precisely. The court charged the jury that if they found such paper was exhibited, they might consider the evidence, whether its contents varied from the statements previously made.

The court charged the jury that if certain conveyances which were shown to have been made by the defendant, were so made with an intention to secure to himself any benefit or advantage in regard to it, or to place his creditors at a disadvantage in collecting their debts ; or if his object was to secure the property for the benefit of his creditors, in his own way, without their knowledge or assent, it was in law a fraud, and if the plaintiffs were induced thereby to enter into a compromise, they would not be bound by it.

The defendant objected that the plaintiffs are not entitled to recover in this form of action, but should have declared in a special action on the case ; but the court overruled the objection.

To these several rulings and charges of the court the defendant excepted.

The jury found a verdict for the plaintiffs, which the defendant moved to set aside, and for a new trial.

He also moved in arrest of judgment, for the cause alleged in the last exception.

*Hatch* and *J. S. Wells*, for the defendant.

I. There was no sufficient evidence that the notes which were permitted to go to the jury, were the notes of the defendant; and the name being cut off, the presumption is that they were fully paid.

The testimony of the witness is to the effect only that *he did not know* that the notes had been paid in full, and does not in any wise negative the idea that full payment may have been made directly to the plaintiffs. *Hylton* v. *Brown*, 1 Wash. C. C. Rep. 343.

II. Arnold was improperly admitted to testify from a memorandum which had been altered since it was made. 1 Greenleaf on Evidence, § 438; *Haven* v. *Wendell*, 11 N. H. Rep. 112, 121; *Doe* v. *Perkins*, 3 D. & E. 749.

The memorandum offered by Arnold became itself evidence, and the defendant acquired rights to cross examine from it, and to exhibit it to the jury. And it is admitted, from principles analogous to those under which account books of parties are admitted in evidence. But alterations and like fraudulent appearances exclude account books. *Eastman* v. *Moulton*, 3 N. H. Rep. 157; 1 Phillips' Evidence 290, Hill and Cowen's note, 528, p. 750. And it is well settled that a *copy* of an original memorandum is not admissible in evidence, unless the witness swear from recollection. *Doe* v. *Perkins*, 3 D. & E. 749; *Morrill* v. *Otis*, 12 N. H. Rep. 466.

III. The letters addressed to Samuel Parsons were improperly admitted in evidence, there being no proof that they were received by Parsons, or were ever in his possession. It should have been shown that Parsons received them before the compromise was effected, and that the contents had been communicated to the plaintiffs, so as to influence them in assenting to the alleged compromise. At any rate, Parsons himself should have been called. *Langhorn* v. *Allnutt*, 4 Taunton 511; *Davis* v. *Mason*, 4 Pick. 156.

IV. The evidence relating to the purchase of a farm by the defendant in 1845, was improperly admitted. From distance of time it could not properly be said to tend to prove that the defendant had concealed property in making his compromise.

The defendant was not bound to have ready in court evidence to explain transactions so remote from the matter at issue.

V. The copies of deeds from the York county registry were not properly admitted in evidence. The fact that deeds had been executed by the defendant, or by John Webster, does not render it probable that the papers produced were copies, or if substantially copies, that they were true copies of such deeds. Certified copies from the York county registry are no better than copies purporting to be made by any individual. There was no evidence of any law or usage in Maine for the recording of deeds. *Pollard* v. *Melvin*, 10 N. H. Rep. 554 ; *Loons* v. *Bedell*, 11 N. H. Rep. 74 ; *Richmond* v. *Patterson*, 3 Ham. (Ohio) 368 ; *Spigail* v. *Perkins*, 2 Root 274 ; *Hill* v. *Wright*, 3 Mis. 243 ; *Kent* v. *Weld*, 2 Fairf. 459 ; *Carroll* v. *Norwood*, 1 Har. & J. 167 ; *Pennel* v. *Weyant*, 2 Harring. 502 ; *Haile* v. *Palmer*, 5 Mis. 403.

VI. The charge, that the jury might consider whether the written statement of the defendant's debts and assets varied from verbal statements previously made, was erroneous. The contents of the paper did not appear in evidence. There was nothing, then, upon which the jury could properly base any judgment concerning it. *Chute* v. *Small*, 17 Wendell 238.

VII. The charge in relation to the effect of the conveyances made by the defendant was erroneous. If the conveyances were made to secure to the defendant some benefit, to the *disadvantage* of the creditors, they were not to be justified ; yet a settlement made by the creditors in view of such conveyances, and with a knowledge of their existence, would be binding. But a conveyance made to secure the property for the benefit of creditors, with or without their knowledge or consent, was not fraudulent. And the plaintiffs, if they were thereby induced to enter into a compromise, are bound, because the conveyance was for their benefit.

VIII. To recover, under the facts alleged by the plaintiffs in this case, they should have brought a special action upon the case. *Stevens* v. *Cushing*, 1 N. H. Rep. 17; *Edwards* v. *Owen*, 15 Ohio 500; 1 Chitty's Pl. 137.

*Christie* and *Kingman*, for the plaintiffs.

I. There was competent evidence that the notes read to the jury were the defendant's.

The evidence shewed these identical papers, with the name of Benjamin Webster added in the usual place; were taken in payment for the goods by the plaintiffs, and were afterwards in the plaintiffs', possession. The defendant, on notice, produced these notes as the notes given for the goods, and claims that his possession of the notes, and his producing them cancelled, is evidence that he has paid the notes, and thus paid for the goods. *Rex* v. *Inhabitants of Middle Tay*, 2 T.·R. 43; *Doxon* v. *Hay*, 1 Esp. Rep. 409; 1 Gr. Ev. § § 569, 564; *Rhoades* v. *Selin*, 4 Wash. C. C. Rep. 717, 719.

II. The witness was properly permitted to refer to an original memorandum " which he knew was correctly made at the time." The alteration of a single number, being satisfactorily explained, could not exclude the whole memorandum. 1 Gr. Ev. 437; *Haven* v. *Wendell*, 11 N. H. Rep. 112; *Doe* v. *Perkins*, 3 T. R. 749; *Bunker* v. *Shedd*, 8 Met. 150; 1 Phil. Ev., Cowen and Hill's note, 528, p. 750.

III. The defendant's letters to Parsons were properly admitted. Parsons was the agent of the plaintiffs and others in effecting the compromise. If they came to the hands of the plaintiffs or of their agent, they are part of the representations of the defendant, on which the compromise was made. Being on the subject of the compromise, directed to the plaintiffs' agent, and produced by them, this is evidence that they came to the plaintiffs' hands, or the hands of their agent, while the business was in progress.

IV. The defendant's purchase of the farm for three thousand dollars, sixteen months after the compromise, was competent as

part of the evidence, to shew that he had a large amount of property in his possession early after the compromise. *McConihe v. Sawyer*, 12 N. H. Rep. 402 ; *Bradley* v. *Oliver*, 10 N. H. Rep. 480 ; *McKenny* v. *Dingley*, 4 Greenl. Rep. 172 ; *Seaver* v. *Dingley*, 4 Greenl. Rep. 320 ; *Whittier* v. *Varney*, 10 N. H. Rep. 291.

V. The question whether the *copies* were properly admitted was not raised at the trial, and cannot be raised now. *McConihe* v. *Sawyer*, 12 N. H. Rep. 406. The objections on trial were that no sufficient evidence was given that such deeds were made, and that no foundation was laid for the admission of secondary evidence. But the evidence was sufficient on both these points. 3 Phil. Ev., Cowen and Hill's note, page 1172, 1187 ; *Southerin* v. *Mendum*, 5 N. H. Rep. 428. The cases cited by the defendant on this point do not sustain his position.

VI. The evidence that the defendant made a written statement of his debts and assets, after the verbal ones proved by the plaintiffs, come from the defendant himself, to shew that the compromise was made on other statements than those proved by the plaintiffs. The written statement being lost, the plaintiffs proved that it did not vary from the verbal statements first made.

VII. Every conveyance made for the purpose of defrauding or delaying creditors, is a fraud in law, and avoids the sale. *McConihe* v. *Sawyer*, 12 N. H. Rep. 396 ; *Smith* v. *Smith*, 11 N. H. Rep. 459 ; *Paul* v. *Crocker*, 8 N. H. Rep. 288 ; *Smith* v. *Lowell*, 6 N. H. Rep. 67. A sale intended to keep property beyond the reach of attachment, though the vender means to appropriate the proceeds of the sale to the benefit of his creditors, is void on this principle, and a fraud which would avoid a sale will avoid a compromise.

VII. If the fraud by which the plaintiffs were induced to give up the notes, has been established, assumpsit will lie for the balance due, in the same manner as it would if sixty per cent. had been simply paid and indorsed on the notes.

PERLEY, J. The plaintiffs proved the sale and delivery of the

goods, for which they declared; but it appeared that they took notes from the defendant as security, and they could not recover for the goods without producing the notes on trial, or showing otherwise that the defendant had not paid, and was not liable to pay them. Nor could the plaintiffs recover on the notes without producing them, until they had laid a proper foundation for secondary evidence. The plaintiffs gave the defendant notice to produce the notes, and he produced on trial, under the notice, two papers, as and for these notes; that is to say, as and for the notes declared on. The plaintiffs' evidence went to shew that these were the papers which were given for the goods; the witness testified directly to that fact. There were then no other notes given for the goods which the defendant had paid or was liable to pay. So far as regards the plaintiffs' claim for the goods, if they shewed these notes had not been paid, or in some other way discharged, the defence, which rested on the taking of the notes, was answered.

As to the plaintiffs' claim on the notes, the papers produced agreed with the notes declared on, except that they had not on them at the time of the trial the signature of the defendant; but the parts of the papers where we should expect the signatures to have been made were torn off, and the testimony was express to the fact that Webster's name was on the papers as maker, when they were delivered as security for the goods.

Was the evidence competent to show that Webster's name was put on the notes by him or by his authority? The defendant delivered these notes to the plaintiffs as security for the goods, with his name signed on them as maker; the plaintiffs received the notes as security. This is not only competent but conclusive evidence against the defendant that the notes were signed by him or by his authority. If the name of the defendant had been put on the notes by any third person, and he had delivered them as his, and obtained credit for the goods on that security he would be held to have adopted the signatures and made them his own, though they had been placed on the notes without any antecedent authority. In addition to this, the defendant produced these pa-

pers on notice, as the notes in question, and when produced, cancelled, insisted upon them as evidence that he had paid the notes and the price of the goods for which they were given. We think that here was not only competent, but abundantly sufficient evidence to shew that the papers produced were the notes given for the goods by the defendant, and that they were signed by him. *Doe* v. *Hemming,* 2 C. & Payne 462 ; *Bradshaw* ·v. *Bennett,* 5 C. & Payne 48.

The notes given for the goods were in the defendant's hands, and produced by him on trial, cancelled. This was *prima facie* evidence that they had been paid. The plaintiffs undertook to prove that in fact sixty per cent. only of the notes had been paid, on a compromise obtained by the fraud of the defendant ; and they sought to recover the balance of forty per cent. Was there competent evidence to rebut the presumption that the notes produced by the defendant had been paid by him ?

The plaintiffs' evidence went to shew—

That the defendant represented to his creditors, including the plaintiffs, that he was unable to pay the whole of his debts.

That the plaintiffs and his other creditors agreed with the defendant to take sixty per cent. of their debts and give up the balance.

That the plaintiffs, according to the terms of their agreement, delivered all these notes, without actual payment at the time, and received sixty per cent. of their amount, in new notes.

That nothing more was paid on these notes when they were delivered out, nor so far as the plaintiffs' book-keeper has any knowledge, at any other time.

That the balance of forty per cent. was carried in the. plaintiffs' books to the account of profit and loss.

Here then was an agreement to take sixty per cent. ; that amount was paid according to the agreement ; the notes were delivered out without other payment at the time ; the person whose business it was to know, has no knowledge of any further payment, and the plaintiffs treated the forty per cent. as a final loss, by carrying it, in the usual course of their business, to the

account of profit and loss.    We have not the least doubt that this was competent evidence that the defendant obtained the notes on payment of sixty per cent., in pursuance of his agreement to that effect.

The memorandum of Arnold was made at the time, and the alteration was made to correct a mistake afterwards discovered. The alteration was not made by the plaintiffs, but by the witness, and was satisfactorily explained.    1 Gr. Evid. 564, 566, 569, 436, 437, 438.

Parsons and others were the agents of the plaintiffs in the negotiation of the compromise.    A representation to these agents, or to any one of them, respecting the business they had in charge, must be regarded as a representation made to their principals. The letters admitted in evidence were addressed to the agents, Parsons and others, and were on the subject of the compromise. They were produced by the plaintiffs, to whose business they related, and this must be taken as evidence that the defendant sent them according to their address, and that they came to the plaintiffs through their agent, Parsons and others.    How else should they be in possession of the plaintiffs ?    We do not see how the evidence would have differed in principle if the letters had been addressed to the plaintiffs themselves, instead of their agents.    In both cases, being written by the defendant, and having passed from his hands, and being found in possession of the parties to whom they were addressed, they must be presumed, till the contrary is shewn, to have been seasonably received by the persons to whom they were addressed.    The agent would receive and hold the letters on behalf of the principal, and the production by the principal would be evidence that they were received for him by the agent.

The written statement made by the defendant to his creditors, was shewn to have been lost.    This made it competent for the plaintiffs to shew the contents by other evidence.    A witness, who testified to verbal statements of the defendant, had also seen the written statement, and testified that the written and verbal statements agreed.    This was competent evidence of the con-

tents of the writing. The written statement of the defendant was not a contract which could not be varied by parol. If the verbal and written statement had disagreed, there could be no legal objection to prove both as evidence of misrepresentation.

The defendant now objects that the copies of the deeds from the registry in Maine were not duly authenticated, and that the execution of the original deeds. should have been proved. On trial, he objected generally to the introduction of the evidence, but did not then take the specific exceptions which he now does.

The plaintiffs gave the defendant notice to produce the deeds; and summoned his brother, the grantee, with a *duces tecum;* the grantee was put on the stand and examined as a witness; neither the witness nor the defendant produced either of the deeds. As the witness claimed title under the deed to him, he was probably not bound to produce it, though that question was not raised on trial, and is not necessary to be discussed here. *Marston* v. *Downs,* 6 Carr. & Payne 381; *Mills* v. *Oddy,* 6 Carr. & Payne 728.

The plaintiffs took all the usual and necessary means to produce the original deeds, and were in a situation to give secondary evidence. If the defendant had pointed his exceptions on trial as he does now, the plaintiffs would have had opportunity to remove them by additional evidence. These exceptions not having been made at the proper times, must be considered waived.

Deeds made to keep the property of the defendants from his creditors, and prevent them from taking it to secure and satisfy their debts, and so leave it in the power of the debtor to take his own time and use his own manner for applying it to the payment of his debts, would clearly be made to *delay* his creditors, and deprive them of the right which the law gives them of taking their remedy into their own hands under legal process; and this would be such a fraud as would make the conveyances void as to creditors.

The case set up by the plaintiffs was, " that they were induced by fraudulent sales and conveyances of the defendant's property,

and by fraudulent representations and concealments of the state of his debts and property," to make the compromise. Of course it cannot be understood that they claimed to be relieved from the compromise, if they knew, at the time, of the frauds and concealments of which they complain ; and there is nothing in the case to show that, when they made the compromise, they had any knowledge of the fraud on which they rely in this case.

The charge of the court on this part of the case, taken in reference to the positions of the parties, and the evidence reported, was in effect, that if the defendant made conveyances of his property for any of the purposes enumerated, and the plaintiffs, believing them to be fair and real, and such as they appeared to be on their face, were induced by them to make the compromise, they would not be bound by it. For instance, if they knew of the conveyance to John Webster, and believed it to be in substance what it was in form, a real conveyance for a valuable consideration, when in fact it was a sham, and were induced by this and other like conveyances to make the compromise, they would not be bound by it ; and this would undoubtedly be correct. It would amount to a representation that the property was not the defendant's, and therefore not liable to be taken for the satisfaction of his debts.

The defendant's purchase of a farm for thirty-one hundred dollars, in sixteen months after the compromise, was competent, with other evidence, to shew that at the time of the compromise he had property which he did not apply to the payment of his debts. If the defendant had in sixteeen months acquired large means, he should have been prepared to shew it.

There is nothing in the objection to the form of the action. The balance of the defendant's debt has not been paid. Unless it is discharged by the compromise, it remains due. If the plaintiffs can avoid and set aside the compromise, they can recover the balance exactly as if no compromise had been made.

*Judgment on the verdict.*